UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

JUN 0 7 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-420-GWU

JOETY W. NEVELS,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Nevels

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Nevels

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

> pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Nevels

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Nevels

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Joety W. Nevels, was found by an Administrative Law Judge (the ALJ) to have "severe" impairments consisting of degenerative disc disease with thoracic and lumbar herniated nucleus pulposus, thoracic/lumbar strain/sprain syndromes, chronic pain syndrome, a pain disorder with both general medical and psychological conditions, an adjustment disorder with mixed anxiety and depressed mood, nicotine dependence, a history of neck, mid back, lower back, and bilateral lower extremity pain, hypertension, and "complaints of dizziness, feelings of hopelessness, worry, and energy/sleep disturbances." (Tr. 24). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Nevels retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 25-8). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, in a work environment that would allow him to alternate positions every 15 to 30 minutes, and also had the following non-exertional impairments. He: (1) needed to avoid overhead reaching; (2) could occasionally climb, stoop, bend, crouch, and crawl; and (3) would have a "limited but satisfactory"

7

ability to deal with work stresses, complete a normal workweek, or respond appropriately to changes in the work setting. (Tr. 366-7). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

The ALJ rejected functional restrictions given by the plaintiff's treating neurosurgeon, Dr. Richard Lingreen, who treated Mr. Nevels for pain control at regular intervals between December, 2001 and August, 2003. (Tr. 184-8, 251-6). Mr. Nevels had initially been referred to Dr. Lingreen's colleague, Dr. John Gilbert, by his family physician, Dr. Robert Hoskins, for complaints of neck and back pain after an accident on a bridge. (Tr. 168). Dr. Hoskins obtained an MRI of the thoracic spine showing a small disc herniation and osteophyte at the T5-T6 level which contacted the spinal cord, along with moderate neural foraminal narrowing, as well as a bulge and mild narrowing at T6-T7 and moderate narrowing at T11-T12. (Tr. 169-70). An MRI of the lumbar spine showed desiccation of all lumbar discs, a central disc herniation at L4-5 which resulted in moderate right-sided neural foraminal narrowing, and a disc bulge at L5-S1. (Tr. 171-2). Dr. Gilbert's initial examination showed tenderness in the mid and low back areas and positive straight leg raising tests, but he concluded that the plaintiff did not have a surgical condition and that Dr. Lingreen should try injections while the plaintiff continued physical

8

therapy. (Tr. 189). He indicated that the plaintiff should stay off work until his next office visit in three months. (Id.). Dr. Lingreen provided various types of injections, including a median nerve branch block which was initially considered successful "until he saw another physician who manipulated his spine" and more injections were required. (Tr. 184-8). Dr. Lingreen also obtained a myelogram and a post myelogram CT scan showing bulging discs and some mild stenosis of the lumbar spine. (Tr. 148-50). His office notes in 2002 indicate that the plaintiff was not able to return to work at his old occupation of locomotive engineer, but that Mr. Nevels was doing well on a low dose of medications and was interested in vocational rehabilitation. (Tr. 255-6). However, Mr. Nevels began having more trouble with back pain and had to restart his medications on an "ongoing basis," and Dr. Lingreen planned a facet median branch nerve rhizotomy "to try to improve his activities to try to discern further limitations." (Tr. 254). Although the plaintiff had a good response to his injections and medications, Dr. Lingreen continued to consider him to be "100 percent disabled." (Tr. 253). In terms of functional restrictions, Dr. Lingreen prepared an assessment in January, 2004 indicating that the plaintiff's diagnoses were cervical degenerative disc disease and herniated nucleus pulposus, cervicalgia, lumbago, and lumbar and thoracic herniated nucleus pulposus, that he required narcotics for pain control, and that these medications reduced his ability to concentrate and he should not operate machinery. (Tr. 321). Dr. Lingreen limited the plaintiff to sitting, standing and walking less than four hours total in an eight-hour

Nevels

day, lifting no more than 10 pounds, no stooping and crouching, and also having limitations on grasping, turning, twisting, fine manipulations, and reaching. (Tr. 322-4). He stated that his patient was not a malingerer, and that he also had depression and anxiety which would "constantly" interfere with his attention and concentration, although he was capable of low stress jobs. (Tr. 322).

The ALJ felt that the limitations were not supported by Dr. Lingreen's objective findings, and stated that she had obtained a consultative examination by Dr. Bobby J. Kidd for another opinion. (Tr. 20). Dr. Kidd signed a form stating that he did examine some, though not all, of Dr. Lingreen's notes and some physical therapy notes, but apparently he did not have access to any of the objective studies such as the MRIs and myelograms. (Tr. 332). A lumbosacral spine x-ray was apparently taken in connection with the evaluation, but is dated some two weeks after Dr. Kidd's evaluation was signed, and Dr. Kidd did not comment on either the x-ray or the other records he was given. (Tr. 330). His physical examination of the plaintiff was essentially normal, apart from elevated blood pressure, and he found no evidence of any restrictions at all. (Tr. 326-31).

The only other evidence of specific physical functional restrictions comes from non-examining state agency reviewers who reviewed a portion of the evidence in 2002, and concluded that the plaintiff could perform medium level exertion with occasional climbing and stooping. (Tr. 210-16, 217-24).

10

Nevels

While the opinion of even a treating source such as Dr. Lingreen is not entitled to total deference where it is not supported by adequate signs, symptoms, and laboratory findings, it would appear that Dr. Lingreen was the only examining source who have access to the entire set of objective studies.  Perhaps most importantly, he not only prescribed narcotic pain medications for the plaintiff but clearly issued warnings against operating machinery with these drugs, and noted that they would impair the plaintiff's judgment and concentration.    The Commissioner's regulations do require her to evaluate "the type, dosage, effectiveness, and side effects of any medication" taken by a claimant to alleviate pain or other symptoms.  20 C.F.R. Section 404.1529(c)(3)(iv) (2005).  Since the side effects listed by Dr. Lingreen are uncontradicted, it was clear error not to include them in the hypothetical question, particularly in view of the manufacturing type jobs that were identified by the VE in response to the question.  (Tr. 366).[1]

The ALJ's choice of mental hypothetical factors is also questionable.  First, she translated the "moderate" limitations found by state agency reviewers to "limited but satisfactory."  (Tr. 190-2, 209, 336).  Second, the state agency reviewers explicitly based their opinion on a consultative psychological examiner, Dr. Kenneth

---

[1]The non-examining state agency sources did have access to a greater portion of the record than Dr. Kidd, and it appears that the ALJ based her restrictions more on their findings than on Dr. Kidd's.  However, the non-examiners did not have access to the entire record, and were not aware of the restrictions later given by the treating source, Dr. Lingreen. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir 1994).

11

Nevels

Starkey. Dr. Starkey had diagnosed a pain disorder and adjustment disorder, and nicotine dependence, and while he did not prepare a functional capacity form, he commented that, with formal care and weekly psychotherapy, the plaintiff's depression and anxiety could improve to the point he could be "rendered psychologically appropriate for vocational training or placement," and that without such care his "prospects for being able to sustain public employment at a future time are guarded." (Tr. 178). Apparently, Dr. Starkey was concluding that the plaintiff was not capable of public employment at that time, but the state agency reviewers did not discuss this aspect of his report. On remand, this opinion should be considered.

The decision will be remanded for further consideration.

This the ____7____ day of June, 2006.

G. WIX UNTHANK
SENIOR JUDGE

12